Jesus DAVILA, Appellant,

v.

STATE of Texas, Appellee.

No. 11–97–00173–CR.

Court of Appeals of Texas, Eastland.

Sept. 23, 1999.

Debra Ellison Farris, Dallas, for appellant.

Bill Hill, Anne Wetherholt, District Attorney's Office, Dallas, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT J., and McCALL, J.

## OPINION

TERRY McCALL, Justice.

The jury convicted appellant of capital murder, and the trial court assessed his punishment at confinement for life. Appellant argues in his first point that the trial court erred in overruling his motion to sever. He argues in his second, third, and fourth points that the trial court erred in admitting his voluntary statement. He argues in his fifth point that the trial court erred in admitting a photograph of the crime scene. Appellant argues in his sixth, seventh, and eighth points that the evidence is legally and factually insufficient to support his conviction and that the evidence is sufficient only to support a conviction for a lesser included offense. We affirm.

### Background Facts

The record shows that, early in the morning of October 10, 1996, Robert Nava and Charles Jones were attacked by four men at a bus stop. Two of the men asked Nava and Jones for money, and both offered up their dollar bus fares. The two men then began hitting Jones and Nava. Nava escaped, but Jones did not. One or two more men got out of a pickup and also attacked Jones. He collapsed to the sidewalk and later died from blunt force injuries.

Later, acting on a lead from another case, the police arrested Gilbert Davila and took his statement. Based on that statement, the police questioned appellant and Victor Davila.[1] The police arrested appellant and Victor after they both gave inculpatory statements. The police then arrested Juan Manuel Lopez, who also gave an inculpatory statement. All four men were indicted for capital murder; Gilbert was tried separately.

### Motion to Sever

■ Appellant argues in his first point that the trial court erred in denying his motion to sever. Appellant, Victor, and Juan went to trial together. Appellant moved to sever his case from the others because he could present "evidence to prove to the Court that a trial with any co-defendant would be prejudicial to him, and that under C.C.P. 36.09, the Court should sever this Defendant's cases from all other co-defendants." The trial court

1. Appellant, Gilbert, and Victor are brothers.

must sever a defendant's case if the evidence shows that the defendant's "joint trial would prejudice the other defendant or defendants." TEX. CODE CRIM. PRO. ANN. art. 36.09 (Vernon 1981). The defendant seeking severance must offer evidence to support his motion. It is not an abuse of discretion for the trial court to deny a motion to sever when no evidence is presented to support the motion. *Ransonette v. State*, 550 S.W.2d 36 (Tex.Cr. App.1976).

 To obtain a severance based on inconsistent or antagonistic defenses, a defendant must show by offer of proof or otherwise what his defense would be if he were not being tried with his codefendant. *Calverley v. State*, 511 S.W.2d 60, 62 (Tex. Cr.App.1974), *overruled on other grounds, Moosavi v. State*, 711 S.W.2d 53 (Tex.Cr. App.1986). Mere proof of differing degrees of culpability will not support a severance; the codefendants' positions must be "mutually exclusive," so that, if the jury believes one, it must necessarily disbelieve the other. *Goode v. State*, 740 S.W.2d 453, 455 n. 2 (Tex.Cr.App.1987); *Silva v. State*, 933 S.W.2d 715, 719 (Tex.App.—San Antonio 1996, no pet'n).

At the severance hearing, appellant presented as evidence only the statements of Victor and Juan. Appellant argued that his defense would be inconsistent with Juan's defense and that a joint trial would prejudice them.[2] Appellant, however, put on no evidence concerning his defense and no evidence concerning Juan's defense. Even if he had put his own statement into evidence, that alone would not demonstrate how his defense and Juan's defense would be "mutually exclusive." In fact, in both appellant's and Juan's statements, Juan does not leave the pickup during the commission of the offense; he is merely the driver.

Furthermore, appellant's case-in-chief consisted solely of recalling Detective Jesus Alphonso Trevino for cross-examination about the voluntariness of the statement. Neither Victor nor Juan put on a defensive case. The record does not reflect that appellant would have proceeded differently if the trial court had severed his case. The trial court did not abuse its discretion in denying a severance, and we overrule appellant's first point of error.

### Admissibility of Appellant's Statement

Appellant argues in his second, third, and fourth points that the trial court erred in finding that his statement was made voluntarily and in overruling his motion to suppress the statement. He argues that: (1) the statement was the product of an illegal arrest; (2) the warnings that he received were improper; and (3) his statement was not voluntary. Appellant argues that the trial court should have suppressed his statement and should not have admitted it into evidence before the jury. When reviewing the trial court's actions in a suppression hearing, we give complete deference to the trial court's determination of historical facts. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Cr.App.1997). We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman v. State*, *supra*. Where such rulings do not turn on

2. During his argument for severance, appellant's lawyer stated:

 Manuel Lopez's case is the one that I'm most anxious to have Jesus's case severed from. With regard to Victor Davila, in good conscience I really cannot stand before the Court and say that Victor's confession hurts us that severely.

Thus, appellant cannot now complain that the trial court erred in failing to sever his case from Victor's case. If anything, appellant received a benefit from being tried jointly with Victor. Victor claimed not to remember seeing appellant at the scene until he saw appellant standing by the pickup. That portion of Victor's statement was not redacted when it was read to the jury.

an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Guzman v. State, supra.*

### No Illegal Arrest

An arrest occurs, for constitutional purposes,[3] when a reasonable person would have believed he was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Livingston v. State*, 739 S.W.2d 311, 327 (Tex.Cr.App.1987), *cert. den'd*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). Police may approach a person without reasonable suspicion or probable cause in order to ask questions or ask the person to come with police to answer questions. *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). If a person acts upon the invitation, request, or urging of police officers, rather than their coercion, force, or threat, his acts are voluntary and he is not in custody or under arrest. *Livingston v. State*, supra. An officer's subjective intent in dealing with a person is irrelevant except to the extent that the officer conveyed his intent to that person. *Michigan v. Chesternut*, 486 U.S. 567, 575 n. 7, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988); see *Dancy v. State*, 728 S.W.2d 772 (Tex.Cr. App.1987) (defendant who voluntarily accompanied officers to police station was not in custody even though a detective testified that the officers would have used force, if necessary, to secure defendant's compliance).

At the suppression hearing, Detective Trevino testified that he went to appellant's house. He requested that appellant accompany the officers to the police station. Detective Trevino testified that appellant was not a suspect at that point and that the police wanted to question him as a possible witness. Detective Trevino did not place appellant under arrest, nor did he force appellant to go to the station. Detective Trevino stated that, if appellant had refused to go with him, he would have left. Detective Trevino further testified that he did not have enough information to arrest appellant at that point and that he did not consider appellant a suspect at that point.

At the police station, Detective Trevino and appellant talked about appellant's background. Detective Trevino questioned appellant about the offense, and appellant's answers indicated that he was more than a witness. Detective Trevino read appellant his *Miranda*[4] rights from a card. Appellant did not invoke any of those rights, and Detective Trevino continued to question appellant about the offense. Appellant finally gave a written and signed "Voluntary Statement" in which he described his participation in the offense.

The trial court, as trier of fact, was free to determine the weight and credibility to be given to Detective Trevino's testimony. Nothing in the testimony suggests that appellant was under arrest when he accompanied Detective Trevino to the police station. Appellant did not testify at the hearing; therefore, there was no evidence that appellant thought he was under arrest, believed he was not free to leave, or thought that he could not refuse to go with Detective Trevino. Appellant's statement was not the product of an illegal arrest because he was not under arrest until after he gave his statement. We overrule appellant's second point of error.

### No Improper Warnings

A defendant's written statement is inadmissible unless, prior to giving

---

3. "Seizure" in Article I, section 9 of the Texas Constitution means the same as "seizure" in the fourth amendment to the United States Constitution. See *Johnson v. State*, 912 S.W.2d 227, 232–35 (Tex.Cr.App.1995).

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the statement, he received the statutorily prescribed warnings. TEX. CODE CRIM. PRO. ANN. art. 38.22, § 2 (Vernon 1979). The defendant must be warned that any statement he makes may be used against him in trial and in court. Article 38.22, section 2(a)(1) and (2). The defendant must make a knowing and voluntary waiver of his rights. Article 38.22, section 2(b). If the defendant receives improper warnings prior to making a statement, that statement is inadmissible per se. *Creager v. State*, 952 S.W.2d 852, 856 (Tex.Cr.App. 1997). If the defendant receives proper warnings, but the interrogating officer later promises him that his statement may be used "for or against" him, that promise becomes a factor for the court to consider when determining the voluntariness of the statement but does not render it inadmissible per se. *Creager v. State, supra* at 855.

In the present case, Detective Trevino testified that he gave appellant all the statutorily required warnings, both from a *Miranda* card and from the top of the preprinted "Voluntary Statement" form. The card and the form were admitted into evidence. Appellant's initials appear next to the warnings on top of the statement form. They indicate that he received, understood, and waived his rights before he gave his statement. Detective Trevino spoke with appellant for some time prior to taking the statement, and he was satisfied that appellant could speak and understand English. Detective Trevino had appellant read part of his statement before he signed it, and Detective Trevino was also satisfied that appellant could read and comprehend English.

Appellant asked Detective Trevino on cross-examination during the hearing whether he told appellant that the statement could be used either for or against him in court and at trial. Detective Trevino answered, "That's correct," after having appellant repeat the question. On redirect examination, Detective Trevino testified

that he had only warned appellant that the statement could be used against him. Detective Trevino denied having told appellant it could be used for him. The record reflects that appellant received the proper statutory and constitutional warnings. Thus, even if Detective Trevino did tell appellant that his statement could be used "for or against" him, the trial court could consider that only as a factor to assess the voluntariness of the statement. The statement was not rendered inadmissible per se. We overrule appellant's third point of error.

*Statement Was Voluntary*

To determine whether a statement is voluntary, the totality of the circumstances surrounding the taking of the statement must be considered. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Griffin v. State*, 765 S.W.2d 422, 429 (Tex.Cr.App. 1989). Detective Trevino testified that appellant proficiently spoke and read English. Detective Trevino testified that he did not obtain appellant's statement by force, threat, or promises of any sort. He testified that appellant did not appear to be under the influence of drugs or alcohol and did not seem to be physically or mentally ill. Detective Trevino testified that he had appellant read part of the statement and then he read the rest of the statement to appellant. Detective Trevino gave appellant the opportunity to make corrections or additions to the statement. Detective Trevino gave appellant all the required warnings. Appellant did not invoke any of his rights, and he waived them on the statement form by initialing them. The trial court had sufficient evidence to find that appellant made his statement voluntarily. We overrule appellant's fourth point of error. The trial court did not err in denying appellant's motion to suppress or in admitting his statement into evidence.

850

## Admissibility of Photograph

Appellant argues in his fifth point of error that the trial court erred in admitting State's Exhibit No. 12, a photograph of the crime scene. He asserts that the photograph was more prejudicial than probative under former TEX.R.CRIM.EVID. 403. We review the trial court's evidentiary rulings for abuse of discretion. Unless the ruling was outside "the zone of reasonable disagreement," we will uphold the trial court's decision. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Cr.App. 1991). Photographs which are so horrifying or appalling that a rational juror could not rationally decide the critical issues of a case after he viewed them are inadmissible. *Barnes v. State*, 876 S.W.2d 316, 326 (Tex.Cr.App.), *cert. den'd,* 513 U.S. 861, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994).

Exhibit No. 12 depicts a pool of Jones' blood on the sidewalk where he fell. Lying on one edge of the pool is a piece of angle iron, allegedly one of the weapons used by Jones' attackers. The trial court admitted State's Exhibits Nos. 4 through 11 along with Exhibit No. 12. Appellant objected only to Exhibits Nos. 12 and 13, which apparently depicted the same subject matter. The trial court excluded Exhibit No. 13 and admitted No. 12. Although the blood and the angle iron are visible in some of the other exhibits, Exhibit No. 12 is the only close-up view. The photograph is in color and the blood is vivid, but we cannot say that the trial court's decision to admit the photograph is outside the zone of reasonable disagreement. The picture is not unnecessarily gruesome or startling. It helps depict the location of one of the instrumentalities of the offense. We overrule appellant's fifth point of error.

## Sufficiency of the Evidence

Appellant argues in his sixth point of error that the evidence is factually in-

sufficient to support his conviction. In his seventh point of error, appellant contends that the evidence is legally insufficient to support his conviction. He argues in his eighth point of error that the evidence is sufficient only to support a conviction of aggravated robbery. Evidence is legally sufficient when, viewed in the light most favorable to the prosecution, it permits a rational trier of fact to find all the essential elements of the charged crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 156–57 (Tex.Cr.App.1991). Evidence is factually sufficient unless the verdict, when viewed without "the prism of 'in the light most favorable to the prosecution,'" is so contrary to the great weight of the evidence as to be manifestly unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Cr.App. 1996).

A person commits capital murder if he intentionally or knowingly causes the death of an individual while in the course of committing a robbery. TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon 1994). A person is criminally responsible as a party to an offense if he commits the offense by his own conduct or by the conduct of another for whom he is criminally responsible. TEX. PENAL CODE ANN. § 7.01(a) (Vernon 1994). The trial court instructed the jury on the law of parties. The indictment charged appellant with "knowingly and intentionally caus[ing] the death of Charles Jones ... by striking Charles Jones with a club, a deadly weapon" during the course of committing a robbery. Appellant, in his closing argument, asserted that the jury should only find him guilty of the lesser included offense of aggravated robbery. Thus, we need only examine whether the evidence was sufficient to support a finding that he intentionally and knowingly caused Jones' death.

Detective Trevino testified during trial and told about taking appellant's "Volun-

tary Statement." Detective Trevino read appellant's statement, which had been redacted to remove references to an extraneous robbery and to replace Victor's and Juan's names with the indefinite pronoun "someone." The redacted statement reads in pertinent part:

> About one month ago myself, someone, my brother, Gilbert, and a friend were at my parents' house drinking beer and sniffing cocaine.... Late that evening we ran out of beer, cocaine and money. Someone had the idea that we should go out and rob someone to get more money for more beer and more cocaine. We all agreed to do it and got into a primer gray truck that someone was driving and took off.... We drove around West Dallas, we still didn't have any money, so we agreed to drive around some more and ended up in Oak Cliff.... As we drove someone and I saw two men at the bus stop and we decided to stop. Someone and Gilbert got off the truck and walked off to where the men were at. Someone and I waited in the truck.... Gilbert told the Black man to give him the money.... The guy would not give him the money, so Gilbert tried to hit him with a stick he had. The man grabbed the stick and started to fight with Gilbert. I saw what was going on and decided to get out of the truck. I grabbed a tire tool and ran up there and hit the man in the back and he fell to the ground. Gilbert tried to hit the man when he was on the ground, but I grabbed him and took the stick away from him.[5]

The other man at the bus stop, Nava, testified that two men approached the bus stop early in the morning on October 10, 1996. One man stood in front of Jones and struck him with a stick of some sort.

Nava escaped from the bus-stop shelter and ran to the rear of a nearby building. He turned around to see that Jones had left the shelter but that three men were around him and were beating him. Nava could not identify his or Jones' attackers. Dr. Jeffrey Barnard, Chief Medical Examiner for Dallas County, testified that Jones died from blunt force injuries to his head and neck. Dr. Barnard identified a large bruise on the back of Jones' neck and testified that it could have been lethal, either alone or in combination with the other blows. Dr. Barnard and Detective Trevino both testified that the piece of angle iron found at the scene, as well as a tire tool, could be considered a "club" and would be capable of causing serious bodily injury or death if used in a certain way.

We hold the evidence to be legally and factually sufficient for the jury to convict appellant of capital murder, either as a principal actor or as a party. We overrule his sixth, seventh, and eighth points of error.

### *This Court's Judgment*

The judgment of the trial court is affirmed.

---

**5.** The jury also heard the redacted statements of Victor and Juan. The trial court instructed the jury to consider each defendant's statement only against that defendant, and we

presume the jury followed those instructions. Thus, we do not consider that evidence in determining the sufficiency of the evidence to convict appellant.