In re State Farm Mutual Automobile Insurance Company, et al










Â 




IN THE
TENTH COURT OF APPEALS
 

No. 10-00-211-CV

IN RE STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY, ET AL.


 

 Original Proceeding
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Relators State Farm Mutual Automobile Insurance Company and State Farm County
Mutual Insurance Company (âState Farmâ) have filed a petition for mandamus seeking to set
aside the trial courtâs denial of a motion to abate filed by State Farm in the underlying
proceeding. State Farm sought to abate the underlying proceeding in order to initiate a
contractual appraisal process, which State Farm contends is a condition precedent to the
plaintiffâs suit. State Farm has also filed an emergency motion for temporary relief, requesting
that we stay all proceedings in the trial court until our final disposition its petition for
mandamus. We have concluded that the petition for writ of mandamus should be and is
denied. 
Â Â Â Â Â Â We note that the cases provided us by State Farm in connection with the issue of whether
State Farm is entitled to an abatement indicate that it has an adequate remedy at law. See
Glens Falls Ins. Co. v. Peters, 386 S.W.2d 529, 532 (Tex. 1965); Scottish Union & Natâl Ins.
Co, v. Clancy, 71 Tex. 5, 8 S.W. 630, 630-31 (Tex. 1888).
Â Â Â Â Â Â The petition for writ of mandamus is denied. Accordingly, the emergency motion for
temporary relief is dismissed as moot. 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â PER CURIAM



Before Chief Justice Davis,
Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Justice Gray (Justice Gray not participating)
Petition for Writ of Mandamus denied, Motion for Temporary Relief dismissed as moot
Opinion delivered and filed June 29, 2000
Do not publish



mily:"Palatino","serif"'>Dismissal of Jury

   In his first and second
issues on appeal, Babalola complains that the trial court erred in dismissing
the selected jury.Â  Babalola complains that the dismissal violated his due
process rights under both the United States and Texas Constitutions.

Facts

Â Â Â Â Â Â Â Â Â Â Â  Jury selection began on
March 30, 2009.Â  The State questioned potential jurors on whether they know
Babalola or his family, and some potential jurors indicated that they know
them.Â  The trial court heard challenges for cause from both the State and
Babalola.Â  The State challenged potential jurors for cause based upon their
relationship with Babalola and his family.

Twelve jurors
and one alternate were chosen to serve as the jury.Â  The jury was recessed for
the day without being sworn in by the trial court.Â  The following morning, the
State informed the trial court that BabalolaÂs parents were ÂminglingÂ with potential
jurors during the jury selection process.Â  Although there is some dispute about
when the State became aware of the interaction, the State explained that it
learned the details of the interaction that morning from staff members.Â  The
trial court held a hearing to consider the matter.

At the hearing,
the State presented witnesses who observed BabalolaÂs parents ÂminglingÂ with
potential jurors.Â  The witnesses testified at the hearing that BabalolaÂs
parents were observed throughout the day interacting with the jury pool.Â 
BabalolaÂs parents were seen engaging members of the jury panel in conversation
on several occasions.Â  BabalolaÂs mother was seated next to a potential juror
having a conversation.Â  BabalolaÂs father shook hands with members of the jury
panel and interacted with potential jurors.Â  The interaction between BabalolaÂs
parents and the jury members occurred in view of the entire jury panel.

BabalolaÂs
mother testified at the hearing that she sat beside a potential juror who
teaches at the same school as she does.Â  BabalolaÂs mother stated that she did
not talk about the case with the potential juror.Â  BabalolaÂs mother testified
that she talked to another potential juror about each otherÂs families.Â 
BabalolaÂs father testified at the hearing that he spoke to two potential
jurors.Â  He discussed family with one of the potential jurors, and the other
knew him from his work as a pastor.

The State asked
the trial court to dismiss the panel.Â  Babalola argued that dismissing the jury
would deny him his right to a fair trial and that the State was seeking to
dismiss the jury in bad faith because the State was unhappy with the selected
jury.Â  The trial court dismissed the jury panel Âbecause of possible negative
influence with potential jurors.Â

After the jury
panel was dismissed, the trial court heard testimony from Joyce Tippitt.Â 
TippittÂs husband was selected to serve on the jury that was dismissed.Â 
Tippitt stated that she observed BabalolaÂs mother in the hallway during jury
selection.Â  BabalolaÂs mother approached Tippitt and said that her son is the
one on trial, and that ÂitÂs really bad.ÂÂ  Tippitt said that BabalolaÂs mother
spoke with members of the jury panel throughout the day.Â  Tippitt also observed
a member of the jury panel buy BabalolaÂs mother a soda.

Due Process and Due Course of Law

Babalola argued
at the hearing that dismissing the jury would place him in double jeopardy.Â 
Because the jury was chosen, but not sworn, jeopardy had not attached.Â  Williams
v. State, 290 S.W.3d 473, 476 (Tex. App.ÂAmarillo 2009, no pet.).

Babalola argues
that he had both a due process and due course of law right to be tried by the
jury selected.Â  Babalola does not argue that the trial court acted in bad
faith, and we will not presume bad faith against the trial court. Â See
Williams v. State, 290 S.W.3d at 476.Â  In the absence of bad faith or
vindictiveness, a defendant does not have a right to a trial in front of a
particular jury.Â  See Williams v. State, 290 S.W.3d at 477.

Â Â Â Â Â Â Â Â Â Â Â  The record does not support
BabalolaÂs argument that he was denied a fair trial.Â  The trial court heard
testimony of the interaction between BabalolaÂs parents and potential jurors.Â 
The interaction occurred in the presence of the entire jury panel.Â  We do not
find that the trial court erred in dismissing the jury panel.Â  Babalola was not
denied due process under the Fourteenth Amendment of the United States
Constitution.

Â Â Â Â Â Â Â Â Â Â Â  Babalola does not argue that
Article I Sections 13 and 19 of the Texas Constitution provide greater
protection than the United States Constitution.Â  We do not find that Babalola
was denied due course of law under the Texas Constitution.Â  We overrule
BabalolaÂs first and second issues on appeal.

Motion to Suppress

Â Â Â Â Â Â Â Â Â Â Â  Babalola complains in his
third, fourth, and fifth issues on appeal that the trial court erred in denying
his motion to suppress.

Facts

Â Â Â Â Â Â Â Â Â Â Â  Officer David Fallwell, with
the College Station Police Department, was assigned to investigate the case,
and Babalola was identified as a suspect.Â  Officer Fallwell obtained a warrant
to search BabalolaÂs residence.Â  On the day the search warrant was executed,
the police department set up surveillance on Babalola.Â  As the officers were
preparing to execute the warrant, Officer Billy Couch initiated a Âtraffic
stopÂ of Babalola as he was turning into the entrance of his apartment
complex.Â  Officer Couch did not observe Babalola commit a traffic violation,
but stopped him for officer safety as the search warrant was being executed.

Â Â Â Â Â Â Â Â Â Â Â  Officer Couch informed
Babalola that he was not free to leave and that Officer Fallwell would be there
soon to talk to him.Â  Officer Fallwell arrived approximately ten minutes after
Babalola was stopped.Â  Officer Fallwell informed Babalola that he was not under
arrest.Â  Officer Fallwell asked Babalola his whereabouts on the date of the
offense.Â  Officer Fallwell testified that Babalola was evasive in his answers
and that he appeared extremely nervous.

Â Â Â Â Â Â Â Â Â Â Â  Officer Fallwell recorded
his conversation with Babalola, and the transcript from that recording was admitted
as evidence. Â Officer Fallwell told Babalola that there had been an aggravated
robbery at the Callaway Villas apartment complex, and he asked Babalola what he
knew about the incident.Â  Babalola admitted that he had talked to Jeff about
getting some Âpurple.ÂÂ  Babalola said that he and another man went to JeffÂs
apartment, but left when they saw someone jumping out of the window.Â  Babalola
said that he was going over there to buy some ÂpurpleÂ and that he did not want
to get in trouble.Â  Officer Fallwell again told Babalola that he was not under
arrest. Â He explained that they just want Âto get to the bottom of this and get
this cleared up.Â

Â Â Â Â Â Â Â Â Â Â Â  Babalola later admitted that
he Âwent in thereÂ but that he ÂdidnÂt do anything.ÂÂ  Babalola then stated
Âjust send me to jail, because my careerÂs over.Â  EverythingÂs over.ÂÂ  Officer
Fallwell again told Babalola that he was not under arrest.Â  Officer Fallwell
said he just wanted to find out the truth.Â  Babalola said that he ran inside of
the apartment, but that was it.Â  He did not have a gun.Â  Babalola said that
ÂSomebody got punched and that was it.ÂÂ  Babalola said that nothing was taken.Â 
Babalola further stated ÂIÂm already in trouble, IÂll just take all the rap.Â  I
donÂt need to get someone else in trouble.Â

Â Â Â Â Â Â Â Â Â Â Â  Officer Fallwell read
Babalola the Miranda[2]
warnings at that time.Â  Babalola then continued to make statements that his
career was over, that he would be kicked out of school, and that it is all
over.Â  Babalola repeatedly told Officer Fallwell to take him to jail.Â  Officer
Fallwell said that he just wanted to hear what happened from Babalola.Â 
Babalola stated ÂNo, because IÂm going to jail regardless, so just let me talk
to a lawyer or whatever and just let me go to jail, man.Â  Â I donÂt want to
snitch on nobody.Â

Â Â Â Â Â Â Â Â Â Â Â  Officer Fallwell again asked
Babalola to just explain what happened.Â  Babalola continued to ask Officer
Fallwell to take him to jail. Babalola later stated that he did not go inside
of the apartment.

Â Â Â Â Â Â Â Â Â Â Â  Officer Fallwell left the
scene to prepare arrest warrants.Â  At BabalolaÂs request, officers took him to
his residence.Â  During that time, officers found a usable quantity of
marijuana.Â  Babalola was placed under arrest for possession of marijuana and
taken to jail.Â  While Babalola was in jail, Officer Fuller obtained the arrest
warrants for aggravated robbery.Â  Officer Fuller went to BabalolaÂs cell to let
him know that he was being charged with two counts of aggravated robbery. Â Babalola
began making statements to Officer Fuller, and Officer Fuller advised Babalola
of his rights.

Standard of Review

Â Â Â Â Â Â Â Â Â Â Â  In reviewing a trial court's
ruling on a motion to suppress, appellate courts must give great deference to
the trial court's findings of historical facts as long as the record supports
the findings.Â  Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App. 1997).Â 
Because the trial court is the exclusive fact finder, the appellate court
reviews evidence adduced at the suppression hearing in the light most favorable
to the trial court's ruling.Â  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000).Â  We also give deference to the trial court's rulings on
mixed questions of law and fact when those rulings turn on an evaluation of
credibility and demeanor.Â  Guzman v. State, supra.Â  Where such rulings
do not turn on an evaluation of credibility and demeanor, we review the trial
court's actions de novo.Â  Guzman v. State, supra; Davila v. State,
4 S.W.3d 844, 847-48 (Tex. App.ÂEastland 1999, no pet'n).Â  We review questions
involving legal principles and the application of law to established facts de
novo.Â  Kothe v. State, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).

Illegal Detention

Â Â Â Â Â Â Â Â Â Â Â  Babalola argues that he was
illegally detained and that any statements made during the detention are
inadmissible.

Â Â Â Â Â Â Â Â Â Â Â  When a search warrant is
issued for a particular residence, a judicial officer has made an objective
determination that there is probable cause to believe someone in the residence
is committing a crime. Â Michigan v. Summers, 452 U.S. 692, 703-4
(1981).Â  Therefore, when the warrant is executed, a person who is an occupant
of the premises may be detained for the duration of the search.Â  Id.

Â Â Â Â Â Â Â Â Â Â Â  Babalola was named in the
search warrant as a Âsuspected party.ÂÂ  Although Babalola was not on the
premises at the time he was detained, the record shows that he was returning to
his residence.Â  The officers detained him in the entryway to the apartment
complex, approximately 200 feet from his apartment.Â  Babalola was detained to
reduce the risk involved in executing the search warrant.Â  See Michigan
v. Summers, 452 U.S. at 702.Â  We find that the officers were justified in
detaining Babalola.[3]

Â Â Â Â Â Â Â Â Â Â Â  Babalola also contends that
his statements to Officer Fallwell were the product of an illegal arrest. In
determining whether an individual was in custody, a court must examine all of
the circumstances surrounding the interrogation, but the ultimate inquiry is
simply whether there was a formal arrest or restraint on freedom of movement of
the degree associated with a formal arrest.Â  Estrada v. State, 313 S.W.3d
274, 294 (Tex. Crim. App. 2010), cert. denÂd, 131 S.Ct. 905, 178
L.Ed.2d 760 (2011); Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. App.
1996); Bartlett v. State, 249 S.W.3d 658, 668 (Tex.App.ÂAustin 2008,
pet. refÂd).Â  The restriction upon freedom of movement must amount to the
degree associated with an arrest as opposed to an investigative detention.Â  Stansbury
v. California, 511.U.S. 318 (1994).Â  An officer's views concerning the
nature of an interrogation, or beliefs concerning the potential culpability of
the individual being questioned, may be one among many factors that bear upon
the assessment whether that individual was in custody, but only if the
officer's views or beliefs were somehow manifested to the individual under
interrogation and would have affected how a reasonable person in that position
would perceive his or her freedom to leave.Â  Estrada, 313 S.W.3d at 294.

Â Â Â Â Â Â Â Â Â Â Â  Officer Fallwell repeatedly
told Babalola that he was not under arrest.Â  Babalola was not placed in
handcuffs or restrained.Â  Babalola statements were not the result of custodial
interrogation.Â  We overrule BabalolaÂs third issue on appeal.

Request for Counsel

Â Â Â Â Â Â Â Â Â Â Â  Babalola argues that while
talking to Officer Fallwell he requested an attorney and that the trial court
should have suppressed all statements made after his request.Â  After speaking
with Babalola about the incident, Officer Fallwell read Babalola the Miranda
warnings. Babalola stated Âso just let me talk to a lawyer or whatever and just
let me go to jail Â .Â

Â Â Â Â Â Â Â Â Â Â Â  When an individual is in
custody and requests an attorney, the individual cannot be further interrogated
by the police until counsel has been provided for him or unless the suspect
reinitiates the interrogation. Edwards v. Arizona, 451 U.S. 477, 484-85,
101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); Brossette v. State, 99 S.W.3d
277, 282 (Tex.App.-Texarkana 2003, pet. dismÂd).Â  As previously stated,
Babalola was not in custody when he made the statements to Officer Fallwell.Â 
Police are not required to terminate an interrogation when an individual who is
not in custody requests an attorney.Â  Brossette v. State, 99 S.W.3d at
282.Â  We overrule BabalolaÂs fourth issue on appeal.

Post Arrest Statement

Â Â Â Â Â Â Â Â Â Â Â  In his fifth issue on
appeal, Babalola states that the trial court erred in Âoverruling his post
arrest statement to Det. Fallwell that occurred while [he] was in custody and
after he requested an attorney.ÂÂ  In his brief, Babalola has a Statement of
Facts in Support of issues Three, Four, and Five.Â  There is an Argument and
Authorities section for both issue three and four.Â  Babalola does not include
any argument or authorities in support of his fifth issue.Â  Citation to
authorities is required in order to properly present an issue to this Court.Â  Tex. R. App. P. 38.1.Â  Babalola does
not present anything for review on this issue.Â  Tex. R. App. P. 38.1; Busby v. State, 253 S.W.3d 661,
673 (Tex. Crim. App. 2008).

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  We affirm the trial courtÂs
judgment. 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  

AL SCOGGINS

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Before Chief
Justice Gray,

Â Â Â Â Â Â Â Â Â Â Â  Justice
Davis, and

Â Â Â Â Â Â Â Â Â Â Â  Justice
Scoggins

Affirmed

Opinion
delivered and filed April 13, 2011

Do not publish 

[CR 25]

Â 









[1]
Oluwakorede
Babalola is also known as Yemi Babalola.





[2] Miranda v Arizona, 384 U.S. 436
(1966).





[3] We do not hold that
officers may detain a suspect named in a search warrant during the execution of
the search warrant when that suspect is at a remote location.

Â