**Opinion filed November 30, 2010**



In The

# Eleventh Court of Appeals

_____

## No. 11-08-00304-CR

_____

## EDDIE WEBB BANKS, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR19353**

## M E M O R A N D U M   O P I N I O N

The trial court convicted Eddie Webb Banks, upon his plea of no contest, of possession of cocaine in a drug-free zone with the intent to deliver. Appellant entered pleas of true to both enhancement allegations. Pursuant to a plea bargain agreement, the trial court assessed punishment at confinement for twenty-seven years. We affirm.

### Issue on Appeal

In his sole issue, appellant argues that the trial court erred in denying his motion to suppress. Appellant argues that the cocaine found under the vehicle he was sitting in was obtained as a result of his illegal detention and arrest.

*Applicable Law*

In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). Because the trial court is the exclusive factfinder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 87. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Guzman*, 955 S.W.2d at 87; *Davila v. State*, 4 S.W.3d 844, 847-48 (Tex. App.—Eastland 1999, no pet.).

*Evidence Presented at Suppression Hearing*

Brown County Deputy Sheriff James Stroop testified that he was on patrol near Cecil Holman Park in Brownwood when he saw what appeared to be a narcotics transaction. The area was known for "high-drug trafficking." Deputy Stroop advised Brownwood Police Officer Brandon Lee Arnold, and Officer Arnold went to check on Deputy Stroop's welfare.

Later, Deputy Stroop and Officer Arnold began a walking patrol in the area. Both officers noticed loud music coming from a car near the park. The officers saw appellant sitting inside the car in the driver's seat. The driver's side door was open, and appellant's legs were outside of the car. Other people were standing around the car. As the officers began to walk toward the car, there was ample lighting from the street lights for the people to see that two uniformed officers were walking toward them. Appellant remained in the car while the others started to "move around."

Deputy Stroop and Officer Arnold testified that they approached the car because the loud music was a violation of a city noise ordinance and to ask appellant to turn the music down. Officer Arnold spoke to appellant about the loud music while Deputy Stroop walked around to the passenger side. Officer Arnold saw what looked like tobacco from a cigar on the ground. Deputy Stroop testified that the tobacco was "packed pretty tightly" as if it had been "poured out" of a cigar to make a blunt-type marihuana cigar. The pile of tobacco was between the front passenger door and the curb. Deputy Stroop found a marihuana blunt in the grass about a foot

from the curb.  Deputy Stroop described a marihuana blunt as "cigar paper that has had the tobacco dumped out and marihuana placed inside of it in order to smoke the marihuana."

While Deputy Stroop and Officer Arnold were talking about the blunt and how Deputy Stroop was going to go get his canine for a free-air search, both officers saw appellant make furtive gestures inside the car.  Deputy Stroop stated that he did not have the best vantage point but that, through the car's tinted windows, he could see appellant making movement toward the center of the car.  Deputy Stroop was concerned that appellant was retrieving a weapon.  Deputy Stroop moved toward the back of the car and noticed that appellant's movements were focused on the console area of the car.  Officer Arnold testified that, while it was hard to see clearly through the tinted windows, he saw appellant make movements toward the center console of the car.

Appellant then got out of the car.  Deputy Stroop testified that he had never seen anyone get out of a car the way appellant did.  Appellant put his hands "way down to the ground" as if he was putting his hands under the car.  Deputy Stroop described it as an "odd way to exit a vehicle."

Deputy Stroop left to retrieve his dog.  He was gone less than five minutes.  When he returned, Deputy Stroop explained to appellant that his dog was trained to alert on marihuana, cocaine, methamphetamine, and heroin.  Deputy Stroop testified that there was a light wind blowing from the driver's side toward the passenger side of the vehicle.  The dog alerted on the passenger side of the car and tried to go underneath the car.

Officer Arnold testified that he then looked under the car and saw a Newport cigarette box.  The Newport box was in close proximity to the driver's side toward the center of the car.  Officer Arnold used his baton to retrieve the box.

Inside the box, Officer Arnold found two baggies.  One baggie contained marihuana.  The other baggie contained what appeared to be crack cocaine.

The officers secured the area and read appellant as well as the others their *Miranda*[1] rights.  Deputy Stroop testified that, based on appellant's furtive movements, the location of the contraband and how it was packaged, and the statements of the other people around the car, he decided to charge appellant.

---

[1]*Miranda v. Arizona*, 384 U.S. 436  (1966).

3

Officer Arnold testified that, after appellant was arrested, he searched the car. Inside the center console, Officer Arnold found "numerous Newport cigarettes that appeared to be hastily dumped." The cigarettes matched the box containing cocaine that was previously retrieved from underneath the car. Officer Arnold did not recall seeing a Newport cigarette box inside of the car. Later, appellant asked to smoke one of the cigarettes.

*Analysis*

Appellant argues that the cocaine was discovered under the car as a result of his illegal detention. Appellant further contends there was no probable cause for his arrest. Therefore, the trial court erred in denying his motion to suppress the cocaine found in the Newport cigarette box.

The State contends that there is no evidence that appellant was illegally detained, that his liberty was not restricted until he was placed under arrest after the cocaine was found abandoned as trash underneath the car, and that appellant had no expectation of privacy for the cigarette box of cocaine or for the free-air canine search of the car. Therefore, the arrest was a valid warrantless arrest, and the trial court did not err.

The record reflects that, in a very short period of time, the officers approached appellant as he was sitting in a car that was parked on a public street at night in a known drug-trafficking area, asked him to turn down his music, found a pile of tobacco between the car and the curb, found a marihuana blunt, and observed appellant make both furtive gestures toward the console inside the car and then exit the car in an "odd" manner with his hands going underneath the car. About five minutes later, the drug dog alerted on the car and tried to go underneath the vehicle. When Officer Arnold looked underneath the car, he saw in plain sight a cigarette box on the public street close to the center of the car on the driver's side. Inside the box, he found cocaine and marihuana. At that point, the officers secured the scene and arrested appellant.

The record supports the trial court's conclusions that the officers' actions and the arrest were valid and that the Newport box of marihuana and cocaine was admissible evidence. As the Court of Criminal Appeals stated in *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002), Texas courts recognize three distinct categories of interactions between law enforcement officials and citizens: encounters, detentions, and arrests. Assuming without deciding that the present interaction was something other than an encounter, it was at most an investigatory detention. The presence of the tobacco on the street between the car and the curb, the nearby

marihuana blunt in the grass, appellant's furtive gestures, and his "odd" exit of the car together with the fact that this took place in a known drug-trafficking area gave the officers sufficient reasonable suspicion to investigate possible criminal activity. *Terry v. Ohio*, 392 U.S.1, 30-31 (1968); *State v. Sheppard*, 271 S.W.3d 281, 286-87 (Tex. Crim. App. 2008).

The State correctly asserts that voluntarily abandoned property is not afforded Fourth Amendment protections. *California v. Hodarid*, 499 U.S 621, 624 (1991); *Swearingen v. State*, 101 S.W.3d 89, 101 (Tex. Crim. App. 2003). The cigarette box of cocaine and marihuana was abandoned property. Likewise, the State also is correct in asserting that canine searches that disclose only the presence of contraband are not afforded Fourth Amendment protections. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005).

Appellant has not established that the trial court erred in denying the motion to suppress. The sole issue is overruled.

## *Holding*

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


November 30, 2010

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

5