

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00419-CR

THE STATE OF TEXAS,

                                                                Appellant

 v.

TONY BETTS,

                                                                Appellee

From the 13th District Court
Navarro County, Texas
Trial Court No. 33,758

## MEMORANDUM  OPINION

The State appeals from the trial court's order granting the motion to suppress of

Tony Tyrell Betts.  We affirm.

### Background Facts

Animal Control Officer Randy Featherston testified at a hearing on the motion to

suppress that he received a call concerning animals fighting.  Officer Featherston went

to the residence, but he did not observe any animals fighting.  He heard a puppy

yelping, and he went onto the property to help the dog.  While on the back of the

property, Officer Featherston observed several malnourished dogs. Officer Featherston stated that the dogs were chained, had no visible food, and dirty water to drink. He called for assistance from the Kerens Police Department.

Kerens Chief of Police Bryan Miers[1] testified that he responded to Officer Featherston's request for assistance. Chief Miers stated that he observed several adult dogs tied to chains and a pen holding puppies. The dogs were all skinny and appeared to be malnourished and in poor health. Chief Miers testified that he could see the dogs from the roadway. The dogs were seized and eventually turned over to the humane society.

Deanna Hall testified at the hearing that she is the owner of the property where the dogs were seized. Hall stated that she gave her nephew, Tony Betts, permission to keep the dogs at her property. Hall further stated that she did not give consent for the officers to enter her property. Tony Betts testified that he did not give officers permission to enter the property.

**Motion to Suppress**

In two issues on appeal, the State argues that the trial court erred in granting the motion to suppress because Betts had no standing to complain about the search and seizure and because the dogs were in plain view of the officers. In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). Because the trial court is the

---

[1] We note that the name of the Kerens Chief of Police is spelled both Meirs and Miers in the record.

exclusive fact finder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman v. State*, supra. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Guzman v. State*, supra; *Davila v. State*, 4 S.W.3d 844, 847-48 (Tex. App.—Eastland 1999, no pet'n). We review questions involving legal principles and the application of law to established facts de novo. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).

**Standing**

In the first issue, the State argues that Betts did not have standing to complain of the search and seizure because he was not a resident of the property in question.

Standing is an individual's right to complain about an allegedly illegal governmental search, and thus to exclude evidence. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). Only after a defendant has established his standing to complain may a court consider whether he has suffered a substantive Fourth Amendment violation. *Kothe v. State*, 152 S.W.3d at 59. Although we defer to the trial court's factual findings and view them in the light most favorable to the prevailing party, we review the legal issue of standing de novo. *Id*.

Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded. *Kothe v. State*, 152 S.W.3d at 59. To carry this burden, a

defendant must normally prove an actual subjective expectation of privacy and that circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). The following are relevant to the court's determination of whether the subjective expectation was one that society was prepared to recognize as objectively reasonable: (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. *Id*.

The animals seized were Betts' property. Betts had previously lived at the residence with his aunt, and he continued to keep his dogs at the residence with her permission. He kept the dogs behind the house where there were structures and a pen to house the dogs. We find that Betts had a reasonable expectation of privacy. We overrule the first issue.

**Plain View**

In the second issue, the State argues that the trial court erred in granting the motion to suppress because the dogs were in plain view. While searches conducted without a warrant are per se unreasonable, seizing contraband in plain view does not run afoul of the Fourth Amendment. *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). If an article is already in plain view, neither its observation nor its seizure

would involve any invasion of privacy. *Id*. The "plain view" doctrine requires that: (1) law enforcement officials have a right to be where they are, and (2) it be immediately apparent that the item seized constitutes evidence, that is, there is probable cause to associate the item with criminal activity. *Id*.

Officer Featherston testified that when he arrived at the property he did not observe any dogs fighting. He heard a puppy yelping after he was already on the property. Officer Featherston walked to the back of the property where he observed the condition of the dogs.

Chief Miers testified that he could see the dogs from the street. Betts testified that the dogs were housed approximately seventy yards from the street. It is not clear that Chief Miers could observe the condition of the dogs from the street. Chief Miers testified that Officer Featherston informed him of the condition of the dogs. Chief Miers then entered the property and observed the dogs in poor condition. Viewing the evidence in the light most favorable to the trial court's ruling, we do not find that the criminal activity of animal cruelty was in plain view of the officers from the street. The trial court did not err in granting the motion to suppress. We overrule the second issue.

## Conclusion

We affirm the trial court's judgment.

AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
(Chief Justice Gray dissenting with note)*
Affirmed
Opinion delivered and filed August 9, 2012
Do not publish
[CR25]

*(Chief Justice Gray dissents.  A separate opinion will not issue.  He notes, however, that his analysis of the factors outlined in United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326, 334-5 (1987) based on the fact findings made by the trial court would result in a legal determination that the area where the dogs were being kept was not "curtilage" and thus not subject to the same protection as the inside of a residence.)