

# IN THE
# TENTH COURT OF APPEALS

_____

### No. 10-12-00306-CR

_____

**MUSSIE ANDEMICHAEL,**

                              **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                              **Appellee**

_____

### From the County Court
### Madison County, Texas
### Trial Court No. 10244

_____

## MEMORANDUM  OPINION

_____

Upon his plea of guilty, the trial court convicted Mussie Araya Andemichael of the offense of possession of marijuana.  The trial court assessed punishment at 180 days confinement and a $2000.00 fine.  The trial court suspended imposition of the confinement portion of the sentence and placed Andemichael on community supervision for eighteen months, and the trial court probated $500 of the fine.  We affirm.

**Motion to Suppress**

Andemichael argues in two issues that the trial court erred in denying his motion to suppress. In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). Because the trial court is the exclusive fact finder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman v. State*, supra. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Guzman v. State*, supra; *Davila v. State*, 4 S.W.3d 844, 847-48 (Tex.App.-Eastland 1999, no pet'n). We review questions involving legal principles and the application of law to established facts de novo. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).

Trooper Felipe Garcia stopped Andemichael's car for failing to have a front license plate. Trooper Garcia testified at the hearing on the motion to suppress that after telling Andemichael he was giving him a warning, Andemichael still appeared nervous and had a facial tremor. Trooper Garcia returned to his patrol car to run a check on Andemichael's license and registration and to type the warning ticket. Because he "detected that something else was wrong," Trooper Garcia also ran a

criminal history that showed Andemichael had two previous arrests for possession of marijuana.

Trooper Garcia returned to Andemichael's vehicle, and he testified that Andemichael still appeared very nervous and that his behavior was not normal. He asked Andemichael about his criminal history, and Andemichael admitted that he had been arrested for possession of marijuana. Trooper Garcia asked if there was marijuana in the vehicle, and Andemichael responded that there was not. Trooper Garcia asked to search the vehicle, and Andemichael said that he could look inside the vehicle, but not search.

Trooper Garcia called a K-9 unit to come to the scene. The Department of Public Safety K-9 was not available, so he called for the City of Madisonville K-9 to assist. Trooper Garcia believed the K-9 unit would be at the scene in ten to fifteen minutes, however, it took around thirty minutes for the unit to arrive.

Officer Jeffrey Covington testified that upon receiving the call to assist, he changed into his uniform as required, loaded the dog, and went to the scene. The dog made a positive alert on the trunk of the vehicle. The officers searched the vehicle and found a black backpack containing marijuana in the trunk of the vehicle.

Andemichael does not challenge Trooper Garcia's initial decision to stop him for failing to have a front license plate. Rather, he argues that he lacked reasonable suspicion to continue detaining him beyond the initial traffic stop.

We first note that a sniff of the exterior of a car by a trained canine during a lawful traffic stop is not a search within the meaning of the Fourth Amendment. *See*

*Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005); *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Once the detention is extended beyond the initial traffic-stop, however, officers must have reasonable suspicion that the car contains narcotics in order to continue the detention. *See Caballes*, 543 U.S. at 407, 125 S.Ct. 834. Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007); *Parker v. State*, 297 S.W.3d 803, 810 (Tex.App. – Eastland 2009, pet. ref'd). Whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion is a question of law that we review de novo. *Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007); *Parker v. State*, 297 S.W.3d at 810.

Trooper Garcia testified that Andemichael acted nervous even after being informed he was receiving a warning ticket. Although nervousness alone is not sufficient to establish reasonable suspicion for an investigative detention, it can do so in combination with other factors. *Hamal v. State*, No. PD-1791-11, 2012 WL 3965358, at *4(Tex. Crim. App. September 12, 2012). Trooper Garcia stated that Andemichael had facial tremors and would not look at him. Additionally, Andemichael had two previous arrests for possession of marijuana. Although a prior criminal record does not by itself establish reasonable suspicion, it is a factor that may be considered. *Hamal v. State* at *4. Trooper Garcia testified that Andemichael went "back and forth" on whether he would give consent to search his vehicle. Based on the totality of the

circumstances, we find that Trooper Garcia had reasonable suspicion to continue to detain Andemichael.

We now address whether the duration of the detention was reasonable. Andemichael was detained approximately thirty minutes while waiting for the K-9 unit to arrive at the scene. In *Parker v. State*, the defendant was detained approximately one hour while waiting for a drug dog to arrive at the scene. *Parker v. State*, 297 S.W.3d 803, 812 (Tex.App.-Eastland 2009, pet. ref'd). The Court found that a seventy-minute detention was not unreasonable per se. *Id*. The Court stated that reasonableness of the duration of the defendant's detention depends on whether the officer diligently pursued a means of investigation that was likely to confirm or dispel his suspicions quickly. *Id*.

Trooper Garcia testified that he called for a K-9 unit to come to the scene after Andemichael was inconsistent in giving consent to search the vehicle. The DPS K-9 unit was unavailable, so Trooper Garcia called for the City of Madisonville K-9 unit. Trooper Garcia believed that the officer would be at the scene in ten to fifteen minutes. When the officer did not arrive in ten minutes, Trooper Garcia called to check the status of the arrival time. When the K-9 unit arrived at the scene, the dog immediately got out and "went to work." Trooper Garcia acted diligently to quickly confirm or dispel his suspicions. We hold the trial court did not abuse its discretion in determining that the continued detention was not unreasonable. The trial court did not abuse its discretion in denying Andemichael's motion to suppress. We overrule the first and second issues on appeal.

**Conclusion**

We affirm the trial court's judgment.


AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed March 28, 2013
Do not publish
[CR25]