11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

                                                                              

Roberto Avila

Appellant

Vs.                   No.
11-03-00255-CR -- Appeal from Harris County

State of Texas

Appellee

 

The jury convicted Roberto Avila of the offense of
capital murder, and the trial court assessed his punishment at confinement for
life.[1]  We affirm. 


Appellant presents ten points of error.  In the first five points, appellant contends
that the trial court erred by failing to suppress two written statements, one
audio statement, one video statement, and a map drawn by appellant.  Appellant contends that the statements and
the map were not given voluntarily, that they were prejudicial, and that
appellant was denied his rights to a fair trial and due process.  Under these points of error, appellant
specifically argues that he did not receive the requisite statutory warnings
prior to making the statements or drawing the map.  See Miranda v. Arizona, 384 U.S. 436
(1966); TEX. CODE CRIM. PRO. ANN. art. 38.22 (Vernon Pamph.
Supp. 2004); TEX. FAM. CODE ANN. '
51.095 (Vernon 2002).  








In reviewing a trial court=s
ruling on a motion to suppress, appellate courts must give great deference to
the trial court=s
findings of historical facts as long as the record supports the findings.  Guzman v. State, 955 S.W.2d 85, 87
(Tex.Cr.App.1997).  Because the trial
court is the exclusive fact finder, the appellate court reviews evidence
adduced at the suppression hearing in the light most favorable to the trial
court=s
ruling.  Carmouche
v. State, 10 S.W.3d 323, 327 (Tex.Cr.App.2000).  We also give deference to the trial court=s rulings on mixed questions of law and
fact when those rulings turn on an evaluation of credibility and demeanor.  Guzman v. State, supra.  Where such rulings do not turn on an
evaluation of credibility and demeanor, we review the trial court=s actions de novo.  Guzman v. State, supra; Davila
v. State, 4 S.W.3d 844 (Tex.App. - Eastland 1999,
no pet=n).  

It is clear from the record that appellant did not
receive any warnings prior to giving any of the statements or drawing the map,
and the State does not contend otherwise. 
Rather, the State asserts that no warnings were required because
appellant was not in custody when he made any of the statements or drew the
map.  If statements are not derived from
custodial interrogation, the requirements of Miranda, Article 38.22, and
Section 51.095 do not apply.  Martinez
v. State, 131 S.W.3d 22 (Tex.App. - San Antonio
2003, no pet=n); Holland
v. State, 770 S.W.2d 56, 58 (Tex.App. ‑
Austin 1989), aff=d,
802 S.W.2d 696 (Tex.Cr.App.1991).  Noncustodial, voluntary statements are admissible at
trial.  See Article 38.22, section
5; Section 51.095(b) & (d).  Thus, we
must examine whether appellant was Ain
custody@ when he
made the statements and the map.  

Custodial interrogation means Aquestioning initiated by law
enforcement officers after a person has been taken into custody or otherwise
deprived of his freedom of action in any significant way.@ 
Miranda v. Arizona, supra at 444.  An officer=s
obligation to administer Miranda warnings attaches Aonly where there has been such a
restriction on a person=s
freedom as to render him >in
custody.=@ Stansbury
v. California, 511 U.S. 318, 322 (1994)(quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)).  In order to determine whether a person was Ain custody,@
a court must examine on a case-by-case basis all of the circumstances
surrounding the interrogation.  Dowthitt v. State, 931 S.W.2d 244, 254
(Tex.Cr.App.1996).  The Aultimate inquiry@
is simply whether there was a A>formal arrest or restraint on
freedom of movement= of the
degree associated with a formal arrest.@  Stansbury
v. California, supra at 322 (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)).  A person is Ain
custody@ only if,
under the circumstances, a reasonable person would believe that his freedom of
movement was restrained to the degree associated with a formal arrest.  Dowthitt
v. State, supra; see Stansbury v.
California, supra at 325.  The
Areasonable person@ standard presupposes an innocent
person.  Dowthitt
v. State, supra (citing Florida v. Bostick,
501 U.S. 429, 438 (1991)).  








The only witnesses to testify at the suppression
hearing in this case were Sergeant E. T. Yanchak and
Officer Darrell Robertson of the Houston Police Department.  Sergeant Yanchak
and Officer Robertson were the investigators in this case B a double homicide that occurred on
August 20, 2000.  The case was not solved
until about two years later.  Appellant
became involved in the investigation as a possible witness on June 20,
2001.  He provided a witness statement on
that date, giving the name of a possible suspect.  In that statement, appellant implicated a
third party and stated that he saw the offense from down the street.  The officers spoke to appellant again on June
25, 2001.  On that date, appellant gave
another statement, took a polygraph, and drew a map to help in the
investigation.  According to Sergeant Yanchak, appellant was not a suspect at the time of these
events.  Appellant was not in custody and
was not coerced in any way.  Appellant
voluntarily gave the statements and then was returned to his home.  

Subsequently, in May of 2002, another lead came in
the case when the officers received information that the same murder weapon had
been used in another homicide.  That
weapon had been recovered when Daniel Arredondo was arrested in October of
2001.  Appellant was contacted on May 22,
2002, to find out if Arredondo was involved in the murders in this case.  Appellant and his parents were again very
cooperative.  Appellant provided an audio
statement on that date.  In that
statement, appellant implicated Arredondo. 









Upon implicating Arredondo, appellant agreed to
take another polygraph the following day. 
The officers picked appellant up at his home, but he was not in
custody.  According to Sergeant Yanchak, the police still believed that appellant was a
witness.  However, during the polygraph,
appellant Areacted@ to two questions regarding the
identity of the shooter and subsequently admitted to the polygraph examiner
that he was the shooter.  The polygraph
examiner contacted Sergeant Yanchak, told him about
appellant=s
admission, and stated that appellant was Awilling
to talk.@  Sergeant Yanchak
testified that appellant was still not in custody.  Sergeant Yanchak
then interviewed appellant again. 
However, before the interview, Sergeant Yanchak
informed appellant that he was not in custody and that he was free to
leave.  Appellant stated that he was
willing to give another statement.  This
time, appellant gave a videotaped statement. 
Sergeant Yanchak testified that the videotaped
statement was a noncustodial, voluntary statement and
that appellant had not been coerced, threatened, or promised anything in
exchange for his statement.  The
videotaped statement was admitted into evidence during the trial on the merits
as State=s Exhibit
No. 6.  We have reviewed that
videotape.  In the video, appellant
acknowledged that he voluntarily came to the police station, that his statement
was given voluntarily, that he was not under arrest or in custody, and that he
was free to leave at any time.  After
giving the videotaped statement, appellant was returned to his home.  Later that day, Officer Robertson arrested
appellant at his place of employment.  

We hold that the trial court did not err in
denying appellant=s motion
to suppress.  The evidence shows that
appellant was not in custody at the time he made the statements and the
map.  There is nothing in the record
indicating that the officers were exercising control over appellant, that
appellant was coerced in any way, or that appellant acted involuntarily in
giving the statements.  Cf. Dowthitt v. State, supra.  Appellant=s
first, second, third, fourth, and fifth points of error are overruled.  

In the next four points, appellant complains of
the admission of evidence relating to gang graffiti, gang history and
activities, the criminal activities of gangs in general, and the recovery of
the murder weapon.  Appellant argues that
this evidence was not relevant, that it was extremely prejudicial, and that it
denied appellant his rights to due process and a fair trial.  The trial court=s
decision to admit this evidence must be reviewed under an abuse of discretion
standard, and that decision will be reversed only if it is outside the zone of
reasonable disagreement.  Salazar v.
State, 38 S.W.3d 141, 151 (Tex.Cr.App.), cert.
den=d,
534 U.S. 855 (2001).  








With respect to the evidence of gang graffiti,
appellant=s only
objection at trial was to the relevancy of that graffiti.  Evidence is Arelevant@ if it has Aany
tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be
without the evidence.@  TEX.R.EVID. 401.  Pictures of the crime scene showed gang
graffiti spray-painted on a concrete wall near the victims= bodies.  According to an officer who investigated the
crime scene, the graffiti did not appear to be new.  Further, the officer did not know if the
graffiti was significant because he did know what it meant.  We hold that the trial court did not abuse
its discretion in determining that testimony describing the crime scene and
pictures showing the crime scene were relevant. 
Moreover, because the graffiti was not new and was not linked to the
murders in this case, the error, if any, in the admission of such evidence was
not reversible error under TEX.R.APP.P. 44.2. 
Appellant=s sixth
point of error is overruled.  

With respect to the seventh and eighth points, the
trial court permitted the State, over appellant=s
objections, to introduce evidence from two officers who were Agang experts.@
Among other objections not raised on appeal, appellant objected at trial that
the officers=
gang-related testimony was not relevant under Rule 401 and that it was unfairly
prejudicial under TEX.R.EVID. 403.     The
complained-of testimony showed that appellant and Arredondo were members of a
street gang called APVL,@ which stands for Puros
Vatos Locos and means pure crazy guys, and that one
of the victims was a member of a rival gang called the 52 Hoovers or the Hoover
Crips.  The
other victim was an associate of the Hoovers. 
One of the gang experts testified that the activities of both of these
gangs included drug trafficking, armed robberies, carjackings,
and assaults.  According to the officer,
it would not be unusual for one gang member to hand a weapon to a fellow gang
member and instruct that person to shoot someone.  After initially admitting evidence regarding
the criminal activities of the gangs involved in this case, the trial court
subsequently changed its ruling and instructed the jury to disregard the
officer=s prior
testimony about what the two gangs were known to do.  Appellant then moved for a mistrial, which
the trial court denied.  

We hold that the trial court did not abuse its
discretion in admitting evidence of appellant=s
gang membership or evidence of the victims=
gang affiliation.  Because the gangs
involved were rivals and because appellant had experienced difficulties with
the rival gang in the past, the evidence showing gang membership was relevant
to show appellant=s motive
for the murders.  See Vasquez v. State,
67 S.W.3d 229, 239 (Tex.Cr.App.2002); see also Rule 401.  Furthermore, the trial court could reasonably
have determined that the probative value of such evidence was not substantially
outweighed by the danger of unfair prejudice or the Apotential
character conformity inference.@  Vasquez v. State, supra at 240;
see Rule 403.  








With respect to the evidence that was initially
admitted and showed that appellant=s
gang was known to participate in various criminal activities, we hold that the
trial court=s
instruction to disregard cured the error, if any, in the admission of such
evidence.  The trial court withdrew the
evidence regarding the commission of various crimes by the gangs involved in
this case.  The trial court instructed
the jury Anot to
take that information into account for any purpose in [its] deliberation.@ 
A prompt instruction to disregard will ordinarily cure the error created
by an improper question and answer, even one involving extraneous
offenses.  Ovalle
v. State, 13 S.W.3d 774, 783 (Tex.Cr.App.2000).  In this case, the testimony about the gangs= involvement with various criminal
activities did not harm appellant.  There
was no evidence that appellant was involved in any such criminal activity.  We hold that the trial court=s instruction cured any error and that
the trial court did not abuse its discretion in denying appellant=s related motion for mistrial.  Appellant=s
seventh and eighth points of error are overruled.  

In his ninth point, appellant complains of the
admission of testimony concerning the recovery of the murder weapon during an
unrelated arrest of Arredondo.  Clearly,
the recovery of the murder weapon and the circumstances surrounding its
recovery were relevant under Rule 401. 
Furthermore, the trial court did not abuse its discretion in determining
pursuant to Rule 403 that this evidence was not unfairly prejudicial.  Appellant=s
ninth point of error is overruled.  

In his final point, appellant complains of the
prosecutor=s closing
argument. Appellant argues that the prosecutor improperly struck at the
defendant over the shoulders of defense counsel, denying appellant the rights
to a fair trial and due process. After defense counsel concluded his closing
argument during the guilt/innocence phase of trial, the prosecutor began her
closing argument with the following comments: ALet=s talk about smoke screens here, folks.
You know that=s
[defense counsel=s] job.@ Appellant objected that the prosecutor
was striking at appellant over defense counsel=s
shoulder. The trial court sustained the objection and instructed the jury to Adisregard the last comment.@ Appellant then unsuccessfully moved
for a mistrial.  








Proper jury argument falls into one of four
categories:  (1) summation of the
evidence, (2) reasonable deductions from the evidence, (3) answers to the
arguments of opposing counsel, and (4) pleas for law enforcement.  Cantu v. State, 842 S.W.2d 667, 690
(Tex.Cr.App.1992), cert. den=d,
509 U.S. 926 (1993).  The State is not
permitted to strike at the defendant over defense counsel=s shoulders or to accuse defense
counsel of bad faith and insincerity.  Wilson
v. State, 938 S.W.2d 57, 60 (Tex.Cr.App.1996).  Although it may have been permissible for the
prosecutor to discuss the Asmoke
screens@
presented by the defense, it was not proper for the prosecutor to argue that it
was defense counsel=s job to
create smoke screens.  See Mosley v.
State, 983 S.W.2d 249, 258-60 (Tex.Cr.App.1998), cert. den=d, 526 U.S. 1070 (1999); Dinkins
v. State, 894 S.W.2d 330, 357 (Tex.Cr.App.1995); Gorman v. State,
480 S.W.2d 188 (Tex.Cr.App.1972). 
However, the record in this case shows that the trial court sustained
appellant=s
objection and promptly instructed the jury to disregard the prosecutor=s comment.  An instruction to disregard generally cures
error during closing argument unless the argument is so egregious or
inflammatory that its prejudicial effect cannot reasonably be removed by such
an admonition.  Wilson v. State, 7
S.W.3d 136, 148 (Tex.Cr.App.1999); Hernandez v. State, 819 S.W.2d 806,
820 (Tex.Cr.App.1991), cert. den=d,
504 U.S. 974 (1992); see Guidry v. State, 9 S.W.3d 133, 154
(Tex.Cr.App.1999), cert. den=d,
531 U.S. 837 (2000).  We find that the
State=s
argument in this case was not so egregious or so inflammatory that any
prejudicial effect could not have been removed by the trial court=s instruction to disregard.  The tenth point of error is overruled.  

We hold that appellant received a fair trial and
that he was not denied the right to due process.  

The judgment of the trial court is affirmed.  

 

W. G. ARNOT, III

CHIEF JUSTICE 

June 24, 2004

Do not publish.  See
TEX.R.APP.P. 47.2(b). 

Panel
consists of: Arnot, C.J., and

Wright,
J., and McCall, J. 











[1]At the time of the offense, appellant was under the age
of 17.  Therefore, the only punishment
available was a mandatory life sentence. 
TEX. PENAL CODE ANN. '' 8.07(c) & 12.31 (Vernon 2003 & Supp. 2004).