**Opinion filed August 9, 2012**



# In The

# Eleventh Court of Appeals

_____

## No. 11-10-00356-CR

_____

## ISIDORE KRISHNA BRIDGEFORTH, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. 14276C**

## M E M O R A N D U M   O P I N I O N

The jury convicted Isidore Krishna Bridgeforth of engaging in organized criminal activity. The trial court assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of thirty-five years. The trial court additionally assessed a fine of $10,000. Appellant challenges his conviction in four issues. We affirm.

### Background Facts

Texas Ranger Michael Don Stoner worked as a narcotics agent in Palo Pinto and Parker Counties in the fall of 2009 for the Criminal Investigation Division of the Texas Department of

Public Safety.  While working undercover on September 11, 2009, he entered Jackie Lynn Smith's residence to purchase narcotics.  Ranger Stoner encountered Robert Earl Jefferson Jr. at Smith's residence.  Ranger Stoner sought to purchase $200 worth of crack cocaine from Jefferson.  Ranger Stoner testified that, while he and Jefferson were completing the transaction, Jefferson recognized him as a former classmate from high school.  Ranger Stoner and Jefferson had a discussion away from the others wherein Ranger Stoner asked Jefferson not to reveal his identity to the others.  Ranger Stoner also asked Jefferson to contact him later for the purpose of getting Jefferson to assist Ranger Stoner in his investigation.

Jefferson contacted Ranger Stoner on November 13, 2009, to provide information about the distribution of crack cocaine in the Mineral Wells area.  Ranger Stoner testified that Jefferson provided him with the names of the individuals involved.  Jefferson also identified the vehicles used in the distribution process, and he informed Ranger Stoner that the drugs were being obtained in Fort Worth.  Jefferson also told Ranger Stoner the route that the suspects would take to and from Fort Worth.

Jefferson subsequently contacted Ranger Stoner on November 16, 2009, to inform him that Smith, appellant, and Brian Dukes would be going that day to purchase cocaine in Fort Worth.  Jefferson further advised Ranger Stoner that the suspects would be driving a maroon Dodge pickup.  Upon receiving this information, Ranger Stoner set up surveillance on Smith's residence in Mineral Wells.  He observed appellant and Dukes loading Smith into the Dodge pickup that Jefferson had described.  Ranger Stoner knew appellant and Smith on sight.  Smith needed their assistance getting into the vehicle because he was handicapped.

Ranger Stoner and two other undercover narcotics agents conducted "moving surveillance" on Smith, appellant, and Dukes as they first ran some errands in Mineral Wells.  The suspects then exited Mineral Wells on FM 1195 driving through Millsap to Interstate 20 and then to Fort Worth.  After making several stops in Fort Worth, the suspects drove to a residence on Harlem Street in Fort Worth.  Ranger Stoner testified that the residence belonged to Wayne Edward Allen.  He observed appellant and Dukes meeting with Allen in his front yard.

The agents lost surveillance of Smith, appellant, and Dukes afterwards.  Based upon information provided by Jefferson, Ranger Stoner and the agents drove back toward Mineral Wells on Interstate 20 in an attempt to reestablish surveillance.  Ranger Stoner observed the Dodge pickup near the Brock exit.  Ranger Stoner passed the suspects in the process of catching

up to them. He observed appellant driving the pickup. Ranger Stoner exited Interstate 20 via the Brock exit, and the suspects did as well. While Ranger Stoner proceeded toward Millsap, the suspects turned onto Fairview Road. Ranger Stoner dispatched another agent to follow the suspects.

Appellant subsequently failed to negotiate a curve on Fairview Road, resulting in the pickup striking a tree. When agents arrived on the scene of the accident, appellant and Dukes were standing outside the pickup. Agents found a crack pipe in a nearby ditch and a rock of crack cocaine in the bed of the pickup near the area where appellant was standing. While agents arrested appellant for possession, Ranger Stoner spoke with Dukes away from the others. Dukes told Ranger Stoner that the group had acquired drugs in Fort Worth. Dukes also voluntarily removed a package containing crack cocaine from his sweatpants and gave it to Ranger Stoner. Ranger Stoner did not arrest Dukes at that time. Agents also did not arrest Smith. Instead, ambulance personnel transported Smith to the hospital for evaluation.

Dukes came to see Ranger Stoner on November 17, 2009, to be interviewed. Dukes agreed at that time to inform Ranger Stoner if anyone affiliated with Smith returned to Fort Worth for more drugs. Dukes called Ranger Stoner on November 19, 2009, to tell him that a group planned to return that day to Fort Worth for more drugs. Ranger Stoner established surveillance on Smith's residence at that time. He subsequently observed Billy Ray Herring loading Smith into a white Dodge pickup. Ranger Stoner also observed Wilbert Ratliff accompanying Smith and Herring in the pickup.

Ranger Stoner and other agents followed the suspects' vehicle to Fort Worth. They observed the suspects pulling into a church parking lot near Allen's residence. While Herring looked under the hood of the pickup, Ratliff walked across the street to Allen's house. Ranger Stoner testified that Ratliff was observed meeting with Allen. After Ratliff walked back to the pickup, the suspects drove back to Mineral Wells with Ranger Stoner and the agents following them.

As the suspects entered Mineral Wells, Ranger Stoner requested State Trooper Donnie Wright and Mineral Wells Police Officer Scott Mitcham to stop them. Trooper Wright stopped the vehicle for speeding. Trooper Wright initially spoke with Herring outside the vehicle. Trooper Wright subsequently removed Ratliff from the vehicle. Trooper Wright made the decision to arrest Ratliff when he found a crack pipe on him. As Trooper Wright was

handcuffing Ratliff, Ratliff threw a baggie of crack cocaine into a nearby ditch. Trooper Wright permitted Herring and Smith to leave, and he transported Ratliff to the DPS office for Ranger Stoner to interview him. Ratliff told Ranger Stoner that the drugs that he threw in the ditch came from Allen.

Ranger Stoner described Allen's role in the organization as the supplier of the crack cocaine. Ranger Stoner testified that Smith served as the connection to the source and supply. Smith also orchestrated the transport of crack cocaine from Fort Worth and its distribution in Mineral Wells. Ranger Stoner described the roles of appellant, Ratliff, Dukes, Herring, and Jefferson as assisting with the transport and distribution of crack cocaine in Mineral Wells. Ranger Stoner testified that the maroon Dodge pickup in which appellant, Dukes, and Smith traveled on November 16 belonged to Allen and that Allen provided it to Smith to use in traveling back and forth between Mineral Wells and Fort Worth.

Jefferson testified that Allen initially delivered cocaine to Smith at his residence in Mineral Wells and that he did so often. Jefferson also testified that Allen provided Smith with the maroon Dodge pickup for the purpose of transporting the cocaine from Fort Worth to Mineral Wells. Jefferson stated that he, appellant, Dukes, Ratliff, and Herring hung out at Smith's residence and that the money gleaned from the sale of cocaine went into Smith's wallet.

Dukes testified that Smith provided him with a place to stay and drugs on a daily basis. He admitted to traveling with Smith and appellant to Fort Worth on November 16 to purchase cocaine from Allen. Dukes testified that Smith accompanied them because it was his money and he was the one purchasing the cocaine. Appellant got the money from Smith to purchase the drugs, and he put the cocaine in Smith's coat pocket after the transaction occurred. Dukes removed the drugs from Smith at Smith's request after the wreck occurred. Dukes admitted to possessing the drugs when the officers arrived at the scene of the wreck.

When Dukes visited with Ranger Stoner the next day, he told Ranger Stoner about the organization and said that Smith was the "kingpin." Dukes testified that everyone helped Smith because of his handicap. He stated that the group would go to Fort Worth several times a week to resupply and that he went along on several occasions. Dukes testified that Smith wanted to make the trip on November 19, 2009, to replace the drugs that were lost when Dukes was arrested on November 16, 2009. Dukes also testified that he had observed Allen coming to

4

Smith's residence on several earlier occasions to deliver cocaine to Smith and that Allen gave the maroon Dodge pickup to Smith so that Allen would not have to come to Mineral Wells.

Ratliff testified that he lived with Smith because he needed a place to stay and Smith needed assistance. Ratliff stated that Smith compensated him with a place to stay and later crack cocaine. Ratliff testified that Smith contacted Herring on November 19 so that they could use his pickup to travel to Allen's residence in Fort Worth. Ratliff testified that Smith accompanied them on November 19 because "[h]e's the man that took care of the business, you know." Ratliff stated that they called Allen while en route and that he met Allen at his door for the transaction. Ratliff also testified that Smith gave him the money to purchase the drugs.

### Underlying Proceedings

The grand jury indicted appellant, Allen, Smith, Herring, and Ratliff for engaging in organized criminal activity. The indictment alleged that they collaborated in a combination to carry out a conspiracy to possess cocaine with the intent to deliver. *See* TEX. PENAL CODE ANN. § 71.01 (West 2011), § 71.02 (West Supp. 2012). Appellant, Allen, and Smith were tried together. The jury convicted all three of engaging in organized criminal activity.[1]

### Issues

Appellant asserts in his first issue that the trial court erred in denying his motion to sever his trial from that of the other defendants. In his second issue, he attacks the sufficiency of the evidence supporting the corroboration of accomplice testimony. Appellant asserts in his third issue that the trial court erred in allowing the admission of his out-of-court statement. In his fourth issue, appellant contends that the trial court erred by failing to enter written findings of fact and conclusions of law concerning the voluntariness of his statement.

### Severance

The trial court has the discretion to try two defendants together when they are indicted for the same offense or any offense growing out of the same transaction. TEX. CODE CRIM. PROC. ANN. art 36.09 (West 2007). This statute also gives the trial court the discretion to sever the defendants upon evidence that a joint trial would prejudice the moving defendant. *Qualley v. State*, 206 S.W.3d 624, 631 (Tex. Crim. App. 2006).[2] Article 36.09's legislative history

---

[1]Allen's appeal is docketed as Cause No. 11-10-00354-CR, and Smith's appeal is docketed as Cause No. 11-10-00355-CR.

[2]Article 36.09 also provides that a severance is mandatory when one defendant has an admissible prior conviction and the person seeking the severance does not. This portion of the statute is not at issue in this appeal.

indicates that the legislature intended two defendants accused of the same offense to ordinarily be tried together. *Id.* at 632. The prejudice required to support a severance, therefore, must be more than the circumstances or disagreements between parties that would normally be expected to arise during any trial containing multiple defendants. *Id.* "[T]he defendant must show a serious risk that a specific trial right would be compromised by a joint trial, or that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence, and that the problem could not be adequately addressed by lesser curative measures, such as a limiting instruction." *Id.* at 636.

Appellant filed a written motion to sever under Article 36.09, alleging numerous grounds. He argues on appeal that the trial court erred in overruling his motion because the evidence of his codefendants' guilt was grossly disproportionate to his guilt and because the codefendants had antagonistic defenses. However, appellant did not present any evidence at the hearing on the motion to sever. Instead, he relied upon the arguments of counsel to support the motion. The defendant seeking severance must offer evidence to support his motion. It is not an abuse of discretion for the trial court to deny a motion to sever when no evidence is presented to support the motion. *Ransonette v. State*, 550 S.W.2d 36 (Tex. Crim. App. 1976); *Davila v. State*, 4 S.W.3d 844, 847 (Tex. App.—Eastland 1999, no pet.). Furthermore, varying culpability between codefendants does not alone warrant severance. *Davila*, 4 S.W.3d at 847. The record does not establish prejudice under *Qualley* because it does not show a serious risk that a specific trial right of appellant would be compromised by a joint trial or that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence.

Appellant additionally asserts that the motion to sever should have been granted because accomplice testimony would be admitted against him in a joint trial and because evidence of activities occurring after November 16 would be admitted. However, these grounds were not presented in the motion to sever. Therefore, they are waived. Appellant's first issue is overruled.

*Corroboration of Accomplice Testimony*

Article 38.14 of the Code of Criminal Procedure provides that a conviction cannot be upheld on the basis of accomplice testimony unless it is corroborated by "other evidence tending to connect the defendant with the offense committed." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). In reviewing the sufficiency of the corroborating evidence, we eliminate the

accomplice testimony from consideration and focus on the remaining portions of the record to determine whether there is any evidence that tends to connect the defendant with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999). The corroborating evidence may be direct or circumstantial and need not be sufficient by itself to establish the defendant's guilt; it is sufficient if the combined weight of the non-accomplice evidence tends to connect the defendant to the offense. *Solomon*, 49 S.W.3d at 361; *Gosch v. State*, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991). A defendant's mere presence at the scene of the crime is by itself insufficient corroboration; however, presence combined with other suspicious circumstances may be enough to tend to connect the defendant. *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996); *Cox v. State*, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992). Similarly, evidence that the defendant was in the presence of the accomplice at or near the time or place of the offense is proper corroborating evidence. *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997).

Ranger Stoner provided the bulk of the non-accomplice testimony in this case. He testified that he observed appellant, Smith, and Dukes leave Smith's house on November 16 in the same vehicle. He testified that the agents followed them to Allen's residence in Fort Worth. He then observed appellant and Dukes meet with Allen in his front yard. Ranger Stoner further testified that appellant remained in the presence of Smith and Dukes until they wrecked coming back to Mineral Wells and that drugs were recovered from appellant's fellow passenger at the scene of the wreck.

The non-accomplice testimony in this case sufficiently connected appellant to the commission of the charged crime as well as the alleged overt act of him traveling to Fort Worth with Smith on or about November 16 to take delivery of cocaine for the purpose of further distribution. The direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011); *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). We defer to the factfinder's resolution of the evidence in making this determination. *Smith*, 332 S.W.3d at 442; *Simmons*, 282 S.W.3d at 508. Ranger Stoner's testimony tended to connect appellant to the overt act because it placed appellant with Smith at both Smith's residence and Allen's residence under suspicious circumstances.

7

Accordingly, there was sufficient evidence corroborating the accomplice testimony pertaining to appellant's guilt. Appellant's second issue is overruled.

*Out-of-Court Statement*

In his third issue, appellant challenges the trial court's ruling permitting the State to offer his out-of-court statement into evidence. At the pretrial hearing to consider the admission of appellant's statement, Officer Scott Mitcham testified that another officer advised him on November 11, 2009, that appellant wanted to speak with him. Appellant was in custody at the time for being in possession of drug paraphernalia. Officer Mitcham testified that appellant told him that he had information that would lead to the arrest of Smith. Appellant additionally told Officer Mitcham that he usually went with Smith to Fort Worth to obtain crack cocaine, that sometimes Dukes went with them, and that they always traveled through Millsap in making these trips. Officer Mitcham testified that appellant voluntarily made these assertions and that they were not the product of any questioning. Afterwards, appellant was issued a ticket and permitted to leave. On cross-examination, Officer Mitcham testified that appellant had not been given *Miranda*[3] warnings prior to his statement. The trial court denied the motion to suppress by permitting Officer Mitcham to testify to a redacted version of appellant's statement.[4]

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011); *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we afford almost total deference to the trial court's determination of historical facts. *Valtierra*, 310 S.W.3d at 447. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Id.*; *Garza v. State*, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007). Second, we review de novo the trial court's application of law to facts. *Hubert*, 312 S.W.3d at 559; *Valtierra*,

---

[3]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[4]Prior to issuing a ruling on the motions to prohibit the use of appellant's statement, the trial court expressed concern that the use of the statement against Smith might constitute a violation of the Confrontation Clause under *Crawford v. Washington*, 541 U.S. 36, 59 (2004), because appellant would be unavailable to testify if he invoked his right not to testify at trial. The trial court later ruled that appellant's statement would be admissible at trial. The trial court additionally ruled that any reference to Smith or other defendants be redacted from the statement offered at trial to eliminate any Confrontation Clause issues. Pursuant to the trial court's ruling, Officer Mitcham testified as follows regarding appellant's statement: "Q. What did [appellant] tell you? A. He told me that on occasion, him and others went to Fort Worth to pick up crack cocaine."

8

310 S.W.3d at 447. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Valtierra*, 310 S.W.3d at 447–48; *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

Appellant argues on appeal that his statement was inadmissible under *Miranda* because he was in custody at the time the statement was made. We disagree. The trial court determined that appellant was in custody at the time appellant made the statement. However, the trial court also determined that the statement was not the product of a custodial interrogation. We defer to this determination because it hinges on an evaluation of Officer Mitcham's credibility. Voluntary statements that are not the result of custodial interrogations are exempt from the *Miranda* requirements. *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980); *see Jones v. State*, 795 S.W.2d 171, 174–75 (Tex. Crim. App. 1990); *Rathbun v. State*, 96 S.W.3d 563, 565 (Tex. App.—Texarkana 2002, no pet.). As noted by the Supreme Court in *Innis*: "It is clear therefore that the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." 446 U.S. at 300. Accordingly, the trial court did not err in denying the motion to suppress under *Miranda*.

Appellant additionally asserts that the trial court should have suppressed his statement because it was not limited to a particular time frame. Appellant waived this complaint by not presenting it to the trial court. Moreover, we conclude that the contention lacks merit because appellant made the statement contemporaneously with his involvement in the criminal combination. Appellant's third issue is overruled.

### *Written Findings Under Article 38.22*

Appellant asserts in his fourth issue that the trial court erred in failing to enter written findings of fact and conclusions of law under TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West 2005), regarding the voluntariness of his statement. In denying appellant's motion to suppress, the trial court made the following findings on the record:

> In this case, I will find that he was in custody. Absolutely. That's irrefutable. But there is zero evidence as to any interrogation, period, not pursuant to a question asked by you or the State or given by the witness.
>
> And without interrogation, then the parameters of 38.22 and *Miranda* don't apply, and there's not one shred of evidence of trickery, even though you

9

chose that word. There's not one evidence [sic] of coerciveness, even though you chose that word.

Thus, the trial court made oral findings and conclusions on the record. Although Article 38.22, section 6 requires the trial court to enter written findings of fact and conclusions of law, the trial court satisfies that requirement if it "dictates its findings and conclusions to the court reporter, and they are transcribed and made a part of the statement of facts, filed with the district clerk and made a part of the appellate record." *Alford v. State*, 358 S.W.3d 647, 651 n.6 (Tex. Crim. App. 2012) (quoting *Murphy v. State*, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003)). As was the situation in *Alford*, the findings contained in the record in this appeal are sufficient to enable the parties to fully address, and the appellate courts to review, the trial court's ruling. Accordingly, they satisfy Article 38.22, section 6. Appellant's fourth issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.

TERRY McCALL

JUSTICE

August 9, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.