

# IN THE
## TENTH COURT OF APPEALS

### No. 10-12-00287-CR

**SAUL ANGEL PEREZ,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 413th District Court
Johnson County, Texas
Trial Court No. F46013**

## MEMORANDUM OPINION

Saul Angel Perez was indicted on one count of murder and one count of injury to a child. The jury found Perez not guilty on the murder count and guilty of the offense of injury to a child. The jury assessed punishment at twenty years confinement and a $10,000 fine. We affirm.

### Background Facts

Perez and Zenaida Flores were the parents of an infant daughter, J.P. Flores also had two children from a previous marriage. Pursuant to the terms of Flores's divorce

decree, Perez was not allowed to stay overnight at Flores's home. Flores would take Perez to his residence around 9:00 p.m. each night.

Flores testified at trial that on August 2, she went to her father's house with her three children where she spent several hours preparing food. Perez stayed at Flores's house during this time. When Flores returned to her house, Perez took J.P. to the back bedroom, and Flores and her other two children ate dinner. Perez then came out of the bedroom briefly to eat his dinner, but J.P. stayed in the bedroom. Perez returned to the bedroom and told Flores to relax and watch television in the living room with the other two children. Later, Perez came out of the bedroom with J.P., and he told Flores that J.P. had a bug bite. The left side of J.P.'s face was swollen. Perez and Flores gave J.P. Tylenol and put a warm rag on her face. The swelling seemed to go down, and Flores and the children took Perez home around 9:00 p.m. as usual.

A few hours later, Flores was talking on the phone to Perez when she noticed J.P. was making a strange noise. Flores checked J.P. and determined that her heart rate was slow. Perez told Flores to come and get him so they could take J.P. to the hospital. Flores loaded all three children into her vehicle, and they went to pick up Perez. They arrived at the hospital around 1:00 a.m., and J.P. was soon after pronounced dead. The hospital contacted the Alvarado Police Department because the emergency room staff believed the injuries to J.P. were intentional. Both Perez and Flores were taken to the Johnson County Sheriff's Office Detention Center.

**Motion to Suppress**

In the first issue, Perez argues that the trial court erred in denying his motion to suppress. In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). Because the trial court is the exclusive fact finder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman v. State*, supra. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Guzman v. State*, supra; *Davila v. State*, 4 S.W.3d 844, 847-48 (Tex.App.-Eastland 1999, no pet'n). We review questions involving legal principles and the application of law to established facts de novo. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).

Perez was taken to the Johnson County Sheriff's Office Detention Center for questioning about J.P.'s death. Perez was interviewed for approximately eleven hours on August 3, 2010 and for approximately an hour and a half on August 6, 2010. On August 3, Perez was interviewed by five different law enforcement officers, and the *Miranda*[1] warnings were read to Perez prior to beginning the interview. The August 3 interview was conducted in fourteen separate segments, and there were breaks between

---

[1] *Miranda v Arizona*, 384 U.S. 436 (1966).

each segment. At one point during the interview process, Flores was brought into the interview room and allowed to talk to Perez. Perez was again read the *Miranda* warnings before the interview began on August 6.

The trial court held a hearing on Perez's motion to suppress. During the hearing, the trial court viewed the videotaped recording of all of the interviews of Perez. The officers questioned Perez based upon information they had at the time from the medical examiner's office and the hospital staff. The record indicates that Perez changed his story several times on how J.P. sustained her injuries. The officers used different interviewing techniques, including an aggressive style of questioning, in an effort to get a statement from Perez. After hearing all of the evidence presented at the motion to suppress hearing, the trial court denied the motion to suppress; however, a portion of the August 6 interview was suppressed by agreement.

Perez argues that his statement was involuntary because of the coercive conduct of the officers. When considering whether a statement was voluntarily made, we look to the totality of the circumstances surrounding its acquisition. *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007). A confession is involuntary if circumstances show that the defendant's will was overborne by police coercion. *Id.* at 237. A statement is involuntary if there was official, coercive conduct of such a nature that a statement from the defendant was unlikely to have been the product of an essentially free and unconstrained choice by its maker. *See Alvarado v. State,* 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).

Chief Brad Anderson, with the Alvarado Police Department, testified at the hearing on Perez's motion to suppress that Perez never asked for food during the interview. Perez asked for water, and the officers gave him water. Chief Anderson stated that Perez never said that he was sleepy or asked to stop the interview. At a suppression hearing, the trial court is the sole judge of the weight and credibility of the evidence, and the trial court's finding may not be disturbed on appeal absent a clear abuse of discretion. *Alvarado v. State*, 912 S.W.2d at 211. The record does not show that Perez's will was overborne by coercion. Perez agreed to speak to the officers, and he never tried to end the interview. The trial court did not abuse its discretion in finding that Perez's statements were given voluntarily. We overrule the first issue.

**Sufficiency of Evidence**

In the second issue, Perez argues that the trial court erred in denying his motion for a directed verdict because the evidence was insufficient to support the conviction for injury to a child. We review an issue complaining about a trial court's failure to grant a motion for directed verdict as a challenge to the sufficiency of the evidence. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts

to ultimate facts."  *Jackson*, 443 U.S. at 319.   "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction."  *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*,  351 S.W.3d 878, 894 (Tex. Crim. App. 2011), *cert den'd* , 132 S.Ct. 2712, 183 L.Ed.2d 71 (2012).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted.  *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).  And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.  *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  Further, direct and circumstantial evidence are treated equally:   "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt."  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties.  *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The offense of injury to a child is defined in the Texas Penal Code as:

(a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual:

(1) serious bodily injury;
(2) serious mental deficiency, impairment, or injury;  or
(3) bodily injury.

TEX. PENAL CODE ANN. 22.04 (West Supp. 2013). The jury found that Perez engaged in the conduct recklessly, making the offense a felony of the second degree. TEX. PENAL CODE ANN. 22.04 (e) (West Supp. 2013).

Flores testified that J.P. did not have any injuries when they returned from her father's house. Perez took J.P. to the bedroom where he was alone with her for some time. Perez later came out of the bedroom and the left side of J.P.'s face was swollen. Perez told Flores that J.P. had a bug bite.

Perez initially told police that J.P. had a bug bite. He later said that he hit her head while bending down to get a diaper off the floor. Perez also told officers that J.P. rolled off the bed and hit her head. Perez further told the officers that he hit J.P.'s head while swinging her around. The record shows that J.P. died from blunt force injuries to her head. There were three areas of impact to J.P.'s head, and she suffered a four inch fracture of her skull. J.P. had a bruise behind her left ear and on the back of her head as well as hemorrhaging underneath her scalp. The injuries were not consistent with falling off a bed.

There was evidence that Perez was alone with J.P. prior to her injuries. Perez gave several different accounts of how J.P. was injured. The jury is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d at 461. We find that the evidence is sufficient to support the conviction for injury to a child. We overrule the second issue.

## Conclusion

We affirm the trial court's judgment.

AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed June 26, 2014
Do not publish
[CR 25]