**Opinion filed October 1, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00146-CV

_____

## JOYCE JANETTE RIDDLE, Appellant

## V.

## CITY OF ABILENE, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 48,519-A**

## O P I N I O N

Joyce Janette Riddle[1] appeals the order of the trial court in which the trial court granted the City of Abilene's plea to the jurisdiction on her premises defect claim against the City. Riddle argues, in her sole issue, that the trial court erred when it granted the plea to the jurisdiction because she raised a question of material

---

[1]Donald Wayne Riddle provided an affidavit in this case. To avoid confusion, we will refer to Appellant as Riddle and the witness as Donald Riddle.

fact on the City's "actual knowledge" of the dangerous condition that caused her injuries. We affirm.

## I. *Introduction and Procedural History*

Riddle, who had been a player in the recreational league operated by the Abilene Slowpitch Softball Association, became an office worker for the Association in 2008. About three years later, Riddle, who still worked for the Association, was at Nelson Park when she went to turn off a light in "Scorebooth #5." As she stepped onto the plywood floor of the booth, the floor gave way. Riddle fell into the storage space below and sustained injuries.

Riddle filed her premises defect claim, and the City responded with a plea to the jurisdiction; the City argued that it was immune from suit. Later, the City filed a supplement to its plea. Riddle filed a response and attached affidavits from Donald Riddle, Demetrio Dee Bellman, Douglas Cecil Schmitt, and herself, as well as photographs of the floor and other documents. The City filed an affidavit from Richard Rodgers. The trial court held a hearing on the City's plea to the jurisdiction, at which the attorneys presented argument. The trial court subsequently granted the City's plea to the jurisdiction. Riddle appealed.

## II. *Standard of Review*

Whether a trial court has subject-matter jurisdiction is a question of law subject to a de novo review. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). We review de novo an order of a trial court that grants a jurisdictional plea based on governmental immunity. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) (citing *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002)). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

### III. *Evidence Presented*

#### A. *Riddle's Evidence*

Donald Riddle,[2] a carpenter, asserted in his affidavit that the flooring in the booth was improperly constructed because it could not bear the weight of an adult person. Donald Riddle opined that the floor of "Scorebooth #5" had been constructed with improper spacing between the floor joists and that "flimsy" plywood had been used for flooring. He asserted that the floor joists should have been no more than sixteen inches apart from center to center but were more than twice that distance apart. He claimed that the improper spacing on the joists and the improper flooring were "visible" and "obvious" to the "naked eye" from the storage space underneath the booth. He said that several substantial rains had occurred prior to the accident in question. He noted that there was no weather stripping around the door to the booth. As a result, the floor would be soaked by rain. Donald Riddle claimed that water damage had been visible for more than a decade.

Demetrio Dee Bellman was an employee of the City until he retired in 2005. While he was employed by the City, Bellman maintained the ball fields for the City's Parks and Recreation Department. When he maintained the ball fields for the City, Bellman stored fencing and other items in the storage space underneath "Scorebooth #5." He also, as an employee of the City, told his supervisors that "Scorebooth #5" leaked when it rained. During that time, he volunteered to do repairs at Nelson Park, but City personnel informed him that maintenance of the buildings at Nelson Park was the responsibility of the City. They told him that the City had designated employees who dealt with structural issues at the ball fields. After Bellman retired, the Association hired him as a contract employee.

---

[2]The record does not reflect whether Riddle and Donald Riddle are related.

3

Douglas Cecil Schmitt stated in his affidavit that he is a "Life Member" of the Association and that he had served six terms as its president. He said that City employees would regularly store bases and fencing underneath the scoreboard booths. He stated that those employees of the City would have seen the floor of "Scorebooth #5" when they were in the storage area. He said that booths for fields one and two were built when he was with the Association and that the City required the builders to build them in accordance with certain specifications.[3] He provided a copy of a contract between the Association and the City for the lease of the ball fields.[4]

### B. The City's Evidence

Richard Rodgers, Parks Division Manager for the City, stated in his affidavit that he was familiar with the practices and procedures of the Parks Division. Before he became the manager, Rodgers had been the Parks Supervisor for five years. Rodgers averred that the City neither designed nor constructed the "scorekeeper's booth"[5] or its flooring. He testified that no one with the City was aware of any premises defect, design, construction, or maintenance issues with the "scorekeeper's booth" located at the Nelson Park softball fields. The City had not been informed, prior to Riddle's accident, of any need to perform any maintenance upon or repairs to the "scorekeeper's booth," including the flooring. He said that neither the Association nor Riddle informed the City of any need for repairs or maintenance related to the flooring of the "scorekeeper's booth" that was leased by the Association.

---

[3]Schmitt did not mention when "Scorebooth #5 was constructed or who constructed it.

[4]The contract was for 2009. No contract for 2011 was provided. Schmitt asserted that the 2009 contract was representative of the contracts between the Association and the City.

[5]In his affidavit, Rodgers referred to "Scorebooth #5" as the "scorekeeper's booth."

Further, in his affidavit, Rodgers said that the City had a policy and procedure for the inspection of playgrounds but that the City did not have a policy or procedure for the routine inspection of its parks or of the facilities or buildings located in the park system. The City completes maintenance and repairs at the City's parks on an "as-needed" basis. The City inspects and repairs facilities and buildings in the park system after someone has notified the City or made it aware that repair or maintenance of a facility or building is needed.

Rodgers indicated that the City does not routinely keep a record of its maintenance and repairs of facilities and buildings at the parks. The City does not have any record of any repairs or maintenance made to the "scorekeeper's booth" in question prior to Riddle's injury. The City does have records concerning the softball fields' turf, irrigation, and restroom facilities, but the City does not have any records of any construction or building activity performed by the City pertaining to the "scorekeeper's booth" in question at the Nelson Park fields prior to Riddle's accident. Rodgers understood that the Association had the only keys to the "scorekeeper's booth" in question, that the City did not have keys to the booth, and that the Association kept the booth locked.

IV. *Discussion and Analysis*

Riddle argues that the trial court erred when it granted the City's plea to the jurisdiction because she raised a question of material fact on the City's "actual knowledge" of a dangerous condition with the plywood floor of "Scorebooth #5" at Nelson Park.

*A. Sovereign Immunity*

Sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit. *Miranda*, 133 S.W.3d at 224. A party who sues a political subdivision of the state, such as a municipality, must establish that the legislature

has consented to the suit.  TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(B) (West Supp. 2014), § 101.025 (West 2011); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999); *see also Goodson v. City of Abilene*, 295 S.W.3d 692, 694 (Tex. App.—Eastland 2009, no pet.).  Without this consent, immunity deprives the trial court of subject-matter jurisdiction.  *Jones*, 8 S.W.3d at 638.

Sovereign immunity is properly asserted in a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225–26.  A plea to the jurisdiction is a dilatory plea, the purpose of which is to establish a reason why the merits of the plaintiff's claims should never be reached.  *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).  If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do.  *Miranda*, 133 S.W.3d at 227 (citing *Bland*, 34 S.W.3d at 555).  We note that the trial court is not required to look solely to the pleadings, but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.  *Id.* (citing *Bland*, 34 S.W.3d at 555).  When the consideration of a trial court's subject-matter jurisdiction requires the examination of evidence, the trial court should decide the jurisdictional issues as soon as practicable and should confine itself to the evidence relevant to the jurisdictional issue.  *Id.*  The trial court should determine if there is a fact issue, utilizing a standard that mirrors the standard for summary judgment under Rule 166a(c) of the Texas Rules of Civil Procedure; if there is no issue of fact, then the trial court rules on the plea to the jurisdiction as a matter of law.  *Id.* at 228.

### B. Texas Tort Claims Act

The Texas Tort Claims Act outlines a statutory scheme that waives sovereign immunity in three areas: "use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property."  *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002) (quoting *Tex. Dep't of Transp. v. Able*, 35 S.W.3d

608, 611 (Tex. 2000)) (internal quotation marks omitted). The Act provides that a governmental unit is liable for injury and death caused by a condition of real property "if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." CIV. PRAC. & REM. § 101.021(2). With respect to ordinary premises defects, however, the Act specifically limits the governmental duty owed to a claimant to "the duty that a private person owes to a licensee on private property." *Id.* § 101.022(a). Thus, a governmental unit may be liable for an ordinary premises defect only if a private person would be liable to a licensee under the same circumstances. *Id.*

A licensee asserting a premises-defect claim generally must show, first, that the defendant possessed—that is, owned, occupied, or controlled—the premises where the injury occurred. *Cnty. of Cameron*, 80 S.W.3d at 554. A property possessor must not injure a licensee by willful, wanton, or grossly negligent conduct, and it must use ordinary care either (1) to warn a licensee of a condition that presents an unreasonable risk of harm of which the possessor is *actually aware* and the licensee is not or (2) to make the condition reasonably safe. *Id.*

### C. Actual Awareness Requirement

Riddle must show, to establish a waiver of immunity, that the City had "actual knowledge" of the dangerous condition at the time of the accident. *City of Corsicana v. Stewart*, 249 S.W.3d 412, 413–14 (Tex. 2008) (citing *City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006)); *see also* CIV. PRAC. & REM. § 101.022(a). This "actual knowledge" requires the landowner to know that the dangerous condition *existed at the time of the accident* and not merely of the *possibility* that a dangerous condition could develop over time. *Thompson*, 210 S.W.3d at 603. "[H]ypothetical knowledge of a dangerous condition" is not "actual knowledge." *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 117 (Tex. 2010). In addition, "actual knowledge" is not constructive knowledge, the latter of which can

7

be established by facts or inferences to show that a dangerous condition could develop over time. *Corsicana*, 249 S.W.3d at 414–15; *see also State v. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974) ("Actual knowledge rather than constructive knowledge of the dangerous condition is required."). Furthermore, a plaintiff cannot establish an owner's actual knowledge by piling inference upon inference. *Am. Indus. Life Ins. Co. v. Ruvalcaba*, 64 S.W.3d 126, 142 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

Riddle claimed that the City was aware of the dangerous condition of the floor of "Scorebooth #5." Donald Riddle stated that the booth lacked weather stripping and the floor would become soaked by rain; he claimed that water damage would have been visible for more than a decade. He also asserted that the space between the joists was twice as wide as it should have been. The improper construction, flimsy flooring, and water damage were "visible" in the storage space underneath the booth. Bellman stated that, when he was an employee of the City, he told his supervisor that "Scorebooth #5" leaked when it rained. Schmitt asserted that, when City employees went inside the storage area underneath the booth to store fencing and other items, they would have noticed the improper construction and water damage. But the supreme court has held "that the fact that materials deteriorate over time and may become dangerous does not itself create a dangerous condition, and the actual knowledge required for liability is of the dangerous condition *at the time of the accident*, not merely of the *possibility* that a dangerous condition can develop over time." *Thompson*, 210 S.W.3d at 603 (emphasis added) (citing *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 100–02 (Tex. 2000)).

In *Thompson*, an "improperly secured, metal, expansion-joint coverplate" (plate) on the floor of the lobby area of Dallas Love Field airport had protruded, and a patron—Margaret Thompson—tripped, fell, and injured herself. *Id.* at 602–03. Thompson alleged that the City of Dallas had actual knowledge that the plate was a

dangerous condition because employees of the city had walked through the area, including on the day of the accident. *Id.* The city knew that the plate could become loose or raise suddenly over time with ordinary wear and tear, and employees would tighten it when that occurred. *Id.* Accident logs reflected reports of people tripping where Thompson had tripped, but no reports had been filed in the previous three years. *Id.* An expert for Thompson testified that the city had actual knowledge because it must have known of the condition when its employees were in the vicinity and had walked over the cover plate just hours before Thompson's fall. *Id.* at 603–04. The supreme court held that the prior reports and the employees' proximity to the hazard (without evidence of how long the protrusion had existed), as well as the use of an additional screw to secure the plate, did not constitute actual knowledge of a dangerous condition. *Id.*

Riddle did not present any evidence that someone had made the City aware that the flooring was rotten or improperly constructed. "[C]ourts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (per curiam) (citing *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007)). Rodgers averred that the City was not aware of any premise defect, design, construction, or maintenance issues with the "scorekeeper's booth" located at the Nelson Park softball fields. Rodgers also stated that the City had not been informed, prior to Riddle's accident, of any need to maintain or repair the "scorekeeper's booth" or its flooring. He said that neither the Association nor Riddle had informed the City of any need to repair or maintain the flooring of the "scorekeeper's booth" that was leased by the Association. The City had no records of any repairs or maintenance made to the "scorekeeper's booth" in question prior to Riddle's injury. Riddle has failed to create a question of material fact on whether the City was "actually aware" of the alleged dangerous condition of the flooring in

9

"Scorebooth #5" that she claimed caused her injury.  We overrule her sole issue on appeal.

V. *This Court's Ruling*

We affirm the order of the trial court.

MIKE WILLSON

JUSTICE

October 1, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.